Daniel R. Benson
    (*pro hac vice* application forthcoming)
Christian T. Becker
    Attorney ID No. 044142005
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, New York 10019
(212) 506-1932
cbecker@kasowitz.com

*Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARE ONE, LLC; HEALTHBRIDGE MANAGEMENT, LLC; CARE REALTY, LLC; 107 OSBORNE STREET OPERATING COMPANY II, LLC d/b/a DANBURY HCC; 710 LONG RIDGE ROAD OPERATING COMPANY II, LLC d/b/a LONG RIDGE OF STAMFORD; 240 CHURCH STREET OPERATING COMPANY II, LLC d/b/a NEWINGTON HEALTH CARE CENTER; 1 BURR ROAD OPERATING COMPANY II, LLC d/b/a WESTPORT HEALTH CARE CENTER; 245 ORANGE AVENUE OPERATING COMPANY II, LLC d/b/a WEST RIVER HEALTH CARE CENTER; 341 JORDAN LANE OPERATING COMPANY II, LLC d/b/a WETHERSFIELD HEALTH CARE CENTER; 2028 BRIDGEPORT AVE OPERATING COMPANY II, LLC, d/b/a GOLDEN HILL HEALTH CARE CENTER; 745 HIGHLAND AVE OPERATING COMPANY, LLC D/B/A HIGHLANDS HEALTH CARE CENTER; and 162 SOUTH BRITAIN ROAD OPERATING COMPANY II, LLC, d/b/a RIVER GLEN HEALTH CARE CENTER, | Civil Action No. _____<br><br><br>Motion Day: _____<br><br><br>(Oral Argument Requested) |

Plaintiffs,

v.

NATIONAL LABOR RELATIONS BOARD, an
agency of the United States; LAUREN
MCFERRAN, GWYNNE WILCOX, MARVIN
KAPLAN, and DAVID PROUTY, in their
capacities as Members of the National Labor
Relations Board; and KENNETH R. CHU, in his
capacity as an Administrative Law Judge of the
National Labor Relations Board,

Defendants.

# MEMORANDUM OF LAW IN SUPPORT OF
# PLAINTIFFS' APPLICATION FOR
# <u>A TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF</u>

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT .............................................................1

BACKGROUND ..........................................................................5

A.    Procedural History Of the NLRB Proceedings .................................5

B.    Constitutional Separation of Powers and Executive Authority......................6

C.    NLRB ALJs are Protected by Multilevel Removal Restrictions....................9

D.    The NLRB Proceedings Specifically Are Also Unconstitutional ................11

E.    Review Of NLRB Procedures Under the NLRA Scheme............................13

ARGUMENT ...........................................................................15

I.    LEGAL STANDARD ...............................................................15

II.   THIS COURT HAS JURISDICTION OVER PLAINTIFFS' PURELY CONSTITUTIONAL CLAIMS ...................................................16

III.  THIS COURT SHOULD ISSUE A PRELIMINARY INJUNCTION .........22

      A.    Plaintiffs Will Suffer Immediate And Irreparable Harm Without Judicial Intervention. .......................................................22

      B.    Plaintiffs Are Likely To Succeed On The Merits Of Their Underlying Claims. .........................................................23

            1.    Plaintiffs are likely to succeed on the merits of their Article II "Removal Protections" claim (Count I)....................24

            2.    Plaintiffs are likely to succeed on the merits of their Article II "NLRB Proceedings" claim (Count II)....................25

      C.    The Balance of Plaintiffs' Private Interests Far Outweighs Any Burden On Defendants By An Injunction, Which Advances The Public Interest.................................................................26

CONCLUSION ........................................................................28

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*In re 710 Long Ridge Rd. Operating Co. II*, LLC,
  No. 22-3046, 2023 WL 3116434 (3d Cir. Apr. 27, 2023)............................16, 26

*Advanced Disposal Servs. E., Inc. v. N.L.R.B.*,
  820 F.3d 592, 596 n.1 (3d Cir. 2016) ..............................................................25

*Axon Enter., Inc. v. Fed. Trade Comm'n*,
  598 U.S. [  ], 143 S. Ct. 890 (2023)..........................................................*passim*

*Bell v. Hood*,
  327 U.S. 678 (1946)..........................................................................................17

*Correctional Servs. Corp. v. Malesko*,
  534 U.S. 61 (2001)............................................................................................17

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
  561 U.S. 477 (2010)....................................................................................*passim*

*Freytag v. Comm'r of Internal Revenue*,
  501 U.S. 868 (1991)..........................................................................................24

*Kos Pharm., Inc. v. Andrx Corp.*,
  369 F.3d 700 (3d Cir. 2004) ............................................................................16

*Lucia v. S.E.C.*,
  138 S. Ct. 2044 (2018).................................................................................*passim*

*Myers v. U.S.*,
  272 U.S. 52 (1926)............................................................................................24

*Nat'l Lab. Rels. Bd. v. New Vista Nursing & Rehab.*,
  870 F.3d 113, 130 n. 9 (3d Cir. 2017) .............................................................25

*NLRB v. Noel Canning*,
  573 U.S. 513 (2014)....................................................................................*passim*

*Northeastern Lbr. Mfrs. Assn. v. Sky of New York Corp.*,
  2016 WL 7491903 (D.N.J. Dec. 29, 2016)......................................................15

*Printz v. United States*,
  521 U.S. 898 (1997)...........................................................................24

*Sea-Land Serv., Inc. v. DOT*,
  137 F.3d 640 (D.C. Cir. 1998).........................................................22

*Sidak v. United States Int'l Trade Comm'n*,
  No. 1:23-CV-00325 (TNM), 2023 WL 3275635 (D.D.C. May 5, 2023)....*passim*

*Thunder Basin Coal Co. v. Reich*,
  510 U.S. 200 (1994)..........................................................................22

*WestRock Services, Inc.*
  366 NLRB No. 157 (N.L.R.B-BD 2018).........................................10

**United States Constitution**

U.S. CONST. art. II, § 1 ...................................................................6, 7

U.S. CONST. art. II, § 2 ...............................................................*passim*

U.S. CONST. art. II, § 3 ............................................................2, 7, 11

**Statutes**

5 U.S.C. § 1202(d) ...........................................................................10

5 U.S.C. §§ 7521(a)–(b).....................................................................10

15 U.S.C. §§ 45(c), 78y(a)................................................................18

28 U.S.C. § 1331 .........................................................................16, 17

29 U.S.C. §§ 151-169..........................................................................9

29 U.S.C. § 153(b) ............................................................................26

Administrative Procedure Act...........................................................*passim*

National Labor Relations Act ...........................................................*passim*

SEC Act and the FTC Act.................................................................17

**Other Authorities**

29 C.R.F. § 101.14 ...............................................................................14

Federal Rules of Civil Procedure Rule 65 ........................................1, 15

Local Civil Rule 65.1 .............................................................................1

NAT'L LAB. RELS. BD. (Jul. 30, 2012), https://www.nlrb.gov/news-
    outreach/news-story/nlrb-appoints-kenneth-chu-christine-dibble-
    as-administrative-law-judges (last visited June 05, 2023) .................12

Rules and Regulations - National Labor Relations Board Organization
    and Functions, pt. 201, subpt. A, § 201, NAT'L LAB. RELS. BD.,
    https://www.nlrb.gov/sites/default/files/attachments/basic-
    page/node-1717/organdfunctions.pdf (last visited June 05, 2023)......9

Plaintiffs respectfully submit this Memorandum of Law in support of their application pursuant to Rule 65 of the Federal Rules of Civil Procedure and Local Civil Rule 65.1 for a temporary restraining order ("TRO") and a preliminary injunction enjoining Defendants from investigating, pursuing, or otherwise prosecuting claims in, or continuing the NLRB Proceedings against them scheduled to resume on June 26, 2023, on the ground that those proceedings violate the U.S. Constitution.[1]  Under the Supreme Court's decision in April 2023 in *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. [ ], 143 S. Ct. 890 (2023) ("*Axon*"), Plaintiffs are entitled to seek this injunctive relief challenging the constitutionality of administrative proceedings now in this Court, without first exhausting administrative remedies—on the ground that being subjected to unconstitutional proceedings is a "here-and-now injury" that is "impossible to remedy once the proceeding is over."  *Id.* at 903.

## **PRELIMINARY STATEMENT**[2]

This action seeks to put an end to an "illegitimate proceeding, led by an illegitimate decisionmaker." *Axon*, 143 S. Ct. at 903.  Plaintiffs, eight long-term

---

[1]     Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in Plaintiff's complaint (the "Complaint"), filed contemporaneously herewith.

[2]     Plaintiffs incorporate by reference the facts alleged in their Complaint and include an abbreviated version of the essential facts here.

health care facilities and three of their affiliates, are entitled to interim and permanent injunctive relief putting an end to decade-long unconstitutional proceedings (the "NLRB Proceedings") against them before an NLRB ALJ who was appointed in violation of the Appointments Clause of Article II, Section 2, of the U.S. Constitution and who, like all NLRB ALJs, is not accountable to the President in violation of the Take Care Clause of Article II, Section 3.

The Supreme Court's decision in *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477 (2010) ("*Free Enterprise*"), in which the Court held that the statutory protection from removal by the President of the members of the federal Public Company Accounting Oversight Board ("PCAOB") violated the Take Care Clause, establishes unequivocally that NLRB ALJs are unconstitutionally protected as well.  In *Free Enterprise*, the Supreme Court held that  PCAOB members are "inferior officers" under the Appointments Clause, who therefore must be directly accountable to—i.e., directly subject to removal by—the President.  As the Supreme Court made clear, under the Take Care Clause, Congress may not protect such officers from such accountability, and the statutory "two-layer, for-cause" protection from removal enjoyed by PCAOB members was constitutionally invalid.  *Free Enterprise*, 561 U.S. at 492.

NLRB ALJs are indistinguishable in all relevant respects from the PCAOB members in *Free Enterprise*—they also are inferior officers under the

2

Appointments Clause who must be subject to unfettered removal by the President, but who also enjoy statutory "two layer, for-cause" protection against removal. Under National Labor Relations Act ("NLRA") and the Administrative Procedure Act ("APA"), NLRB ALJs can be removed only "for-cause" by the U.S. Merit Systems Protection Board ("Merit Board"), and members of the Merit Board, in turn, can be removed by the President, but only for statutorily enumerated reasons.

The protection against removal of NLRB ALJs is thus unconstitutional under *Free Enterprise*, and NLRB ALJs, including ALJ Chu, may not, consistent with the Constitution, preside over NLRB proceedings.

The particular NLRB Proceedings at issue here suffer from the additional constitutional infirmity that ALJ Chu, who has presided over them since their consolidation over a decade ago, was appointed unconstitutionally. He was appointed in July 2012 by an NLRB Board that included, of its four members, two members appointed by then-President Obama in a January 2012 recess appointment that was, as the Supreme Court held in June 2014, constitutionally invalid under the Appointments Clause. *NLRB v. Noel Canning*, 573 U.S. 513 (2014) ("*Noel Canning*"). Moreover, at least two of the unconstitutionally appointed members of the NLRB participated in deciding contested substantive matters in the NLRB Proceedings as members of NLRB panels reviewing decisions by ALJ Chu.

Because two of the four-person Board that appointed ALJ Chu was itself unconstitutionally appointed, the Board's appointment of ALJ Chu, and any other actions it or its unconstitutionally appointed members took in connection with the NLRB Proceedings, are constitutionally invalid.

The Supreme Court, in *Lucia v. S.E.C.*, 138 S. Ct. 2044, 2055 (2018) ("*Lucia*"), has made clear the remedy for constitutional infirmities affecting ALJs under Article II of the Constitution—the termination of the unconstitutional proceedings before such ALJs and, if the NLRB wishes to proceed, the institution, before a constitutionally appointed and accountable officer, of an entirely new and constitutionally sound proceeding untainted by the unconstitutional proceedings. Apparently recognizing that ALJ Chu's original appointment was invalid, the NLRB in 2014 purported to re-appoint ALJ Chu and the other NLRB ALJs who had been appointed unconstitutionally, but under *Lucia*, that does not, nor could it, retroactively cure the defects invalidating the NLRB Proceedings.

Absent the immediate intervention of this Court, the unconstitutional NLRB Proceedings against Plaintiffs, which had been stayed, will resume on June 26, 2023. Under *Axon*, plaintiffs are entitled to seek injunctive relief in this Court now to address their constitutional challenges to avoid compounding the "here-and-now injury," *id*. at 903, from being subjected to these illegitimate proceedings—harm "impossible to remedy once the proceeding is over, which is

when appellate review kicks in." *Id.*

Accordingly, plaintiffs respectfully request that this Court prevent this "impossible to remedy" injury—this irreparable harm—by issuing an immediate temporary restraining order and preliminary injunction enjoining the Defendants from proceeding with the NLRB Proceedings, pending this Court's adjudication of plaintiffs' declaratory judgment and permanent injunction claims.

## BACKGROUND

### A.    Procedural History Of the NLRB Proceedings

Plaintiffs are eight long-term health care facilities and their affiliates. Compl. ¶¶ 10-21.  For over a decade, the parties in this matter have been involved in the NLRB Proceedings and all currently before the same ALJ designated by the following NLRB Case Numbers:  34-CA-070823, 34-CA-072875, 34-CA-075226, 34-CA-083335, 34-CA-084717, and 01-CA-096349 (the "NLRB Proceedings"). Compl. ¶¶ 28-34.  For reasons independent of the substantive charges brought before the NLRB, the NLRB Proceedings are unconstitutional for violating Article II.  Compl. ¶¶ 1, FN1, 52-58 (Counts I and II to the Complaint).

This dispute originated in 2010 when Debtor Plaintiffs faced financial hardships caused by high employee compensation costs required by their Collective Bargaining Agreements ("CBAs") with the Union.  Plaintiffs and the Union could not reach a resolution of their differences over the economic terms of

the CBAs when they came up for renewal, and the Union filed several charges in the NRLB against Plaintiffs for unfair labor practices.  Compl. ¶ 31.

Based on the Union's charges, the NLRB's Corporate General Counsel ("GC") instituted proceedings in the NLRB.  On February 24, 2013, Debtor Plaintiffs filed in U.S. Bankruptcy Court of the District of New Jersey for Chapter 11 bankruptcy protection.  Compl. ¶ 31.  The bankruptcy court confirmed a bankruptcy plan for the Debtor Plaintiffs in 2014.  Compl. ¶ 31.  The Defendants appealed the order confirming the Reorg Plan.  Compl. ¶ 31.  The NLRB Proceedings were stayed by order of this Court from October 2022 through April 2023, but are scheduled to resume before the NLRB and ALJ Chu on June 26, 2023.  Compl. ¶¶ 32-33; Becker Decl. Ex. A (On Resumption of Hearing).

### B.    Constitutional Separation of Powers and Executive Authority

Article II of the Constitution provides that the "executive power shall be vested in a President of the United States of America."  Art. II, § 1, cl. 1.  The Appointments Clause in Section 2 of Article II states that the President "shall nominate, and by and with the advice and consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other officers of the United States, whose appointments are not herein otherwise provided for, and which shall be established by law: but the Congress may by law vest the appointment of such inferior officers, as they think proper, in

the President alone, in the Courts of Law, or in the Heads of Departments."  U.S. CONST. art. II, § 1, cl. 2 (emphasis added).  These officers and inferior officers "assist the supreme Magistrate [the President] in discharging the duties of his [or her] trust."  *Free Enterprise,* 561 U.S. at 483 (quoting 30 Writings of George Washington 334 (J. Fitzpatrick ed. 1939)).

The Take Care Clause of Article II, Section 3 requires that the President "shall take care that the laws be faithfully executed . . . ."  U.S. CONST. art. II, § 3. "Since 1789, the Constitution has been understood to empower the President to keep these officers accountable—by removing them from office, if necessary." *Free Enterprise*, 561 U.S. at 483 (citing *Myers v. U.S.*, 272 U.S. 52 (1926).  In certain federal agencies, inferior officers appointed not by the President but by a "head of department" are insulated from removal by the President, and are instead only removable by another officer or body, i.e., a second layer of protection from the President, within the Executive branch.  The NLRB is one such agency.

In *Free Enterprise*, the Supreme Court held that members of the federal Public Company Accounting Oversight Board ("PCAOB") were unconstitutionally protected from removal by the President.  There, the Court also concluded that such "multilevel protection from removal is contrary to Article II's vesting of the executive power in the President.  The President cannot 'Take Care that the Laws be faithfully executed' if he cannot oversee the faithfulness of the officers who

execute them." *Id.* at 484.  The *Free Enterprise* Court held that PCAOB members are "inferior officers" under the Appointments Clause who therefore must be subject to removal directly by the President.  *Id.* at 484.  It follows that, if the decision to remove an officer who may be neglecting his or her duties or discharging them properly is "committed to another officer, who may or may not agree with the President's determination, and whom the President cannot remove simply because that officer disagrees with [the President]," then "the President's 'constitutional obligation to ensure the faithful execution of the laws,'" is undermined.  *Id.* at 484 (quoting *Morrison v. Olson*, 487 U.S. 654, at 693 (1988)).

The Supreme Court, in *Lucia v. S.E.C.,* 138 S. Ct. 2044, 2055 (2018) ("*Lucia*"), has made clear the remedy for constitutional infirmities affecting ALJs under Article II of the Constitution—the termination of the unconstitutional proceedings and, if the NLRB wishes to proceed, the institution, before a constitutionally appointed and accountable officer, of an entirely new and constitutionally sound proceeding untainted by the unconstitutional proceedings. *Id.*

Absent the immediate intervention of this Court, the unconstitutional NLRB Proceedings against Plaintiffs, which were previously stayed, will resume on June 26, 2023.  Under *Axon*, plaintiffs are entitled to seek injunctive relief in this Court now to address their constitutional challenges to avoid compounding the "here-

and-now injury," *id*. at 903, from being subjected to this illegitimate proceeding—harm "impossible to remedy once the proceeding is over, which is when appellate review kicks in." *Id*.

### C.    Protected by Multilevel Removal Restrictions

The NLRA established the NLRB as an independent federal agency under the authority of the President.  *See* 29 U.S.C. §§ 151-169.  The NLRB's board members are appointed by the President with the advice and consent of the Senate, and members serve staggered five-year terms.

The GC is appointed to a four-year term by the President, with advice and consent of the Senate.  The GC operates independently of the Board and is responsible for investigating and prosecuting unfair labor practices actions, and general NLRB operations.

The Board itself appoints ALJs to preside over NLRB proceedings and adjudicate federal labor claims or disputes, including those brought under the NLRA.  *See* Rules and Regulations – National Labor Relations Board Organization and Functions, pt. 201, subpt. A, § 201, NAT'L LAB. RELS. BD., https://www.nlrb.gov/sites/default/files/attachments/basic-page/node-1717/organdfunctions.pdf (last visited June 05, 2023) ("The Board appoints administrative law judges and, subject to the provisions of the Administrative Procedure Act and section 4(a) of the National Labor Relations Act, exercises

authority over the Division of Judges.").  ALJs wield considerable judicial-like powers and are undoubtedly inferior officers under Article II.  Compl. ¶¶ 40, 41. Critically, the NLRB has even determined for itself that its ALJs are inferior officers subject to Article II.  *WestRock Services, Inc*. decision. 366 NLRB No. 157 (N.L.R.B-BD 2018).

NLRB ALJs are indistinguishable in all relevant respects from the PCAOB members in *Free Enterprise*—they also are inferior officers under the Appointments Clause who must be subject to unfettered removal by the President, but who also enjoy statutory "two-layer, for-cause" protection against removal. ALJs, once appointed by the Board, cannot be removed by the President at all. Compl. ¶ 43.  Instead, they enjoy two layers of protection from removal.  Under the Administrative Procedure Act, a separate statutory scheme, the Merit Systems Protection Board ("Merit Board") can remove ALJs, but can do so only "for good cause established and determined by the [Merit Board] on the record after opportunity for hearing before the [Merit Board]."  *See* 5 U.S.C. §§ 7521(a)–(b)). Merit Board members, in turn, can be removed by the President, but only for three enumerated reasons.  *See* 5 U.S.C. § 1202(d) ("Any member [of the Merit Board] may be removed by the President only for inefficiency, neglect of duty, or malfeasance in office.").  In sum, ALJs cannot be removed except for-cause, and those that can remove them are themselves only removable for-cause.

This "two-layer, for-cause protection" violates the Take Care Clause and the Separation of Powers to the Constitution.  The Supreme Court found in *Free Enterprise* that inferior constitutional officers must be removable by the President, and that two-layer, for-cause protection is unconstitutional for such officers because they must be accountable to the politically accountable President.  *Free Enterprise,* 561 U.S. at 513-14 ("The Constitution that makes the President accountable to the people for executing the laws also gives him the power to do so. That power includes . . . the authority to remove those who assist him in carrying out his duties.  Without such power, the President could not be held fully responsible for discharging his own responsibilities; the buck would stop somewhere else.").

### D.   The NLRB Proceedings Specifically Are Also Unconstitutional

In January 2012, then-President Obama, during a three-day recess between *pro forma* sessions of the U.S. Senate, attempted to make three "recess appointments" of Sharon Block, Richard Griffin, and Terence Flynn, to the Board. Compl. ¶ 44.  These appointments, however, were never confirmed by the Senate, and were ruled constitutionally invalid by the Supreme Court in *NLRB v. Noel Canning*, 573 U.S. 513 (2014) (hereinafter "*Noel Canning*").

Over eighteen months later, on July 16, 2013, then-President Obama withdrew the pending appointment nominations of Griffin and Block and were

11

replaced with two, Senate-confirmed appointees (Flynn had stepped down from the Board in July 2012).  Compl. ¶ 44.  Eleven months later, the Supreme Court confirmed in the *Noel Canning* decision that the January 2012 recess appointments of Block, Griffin, and Flynn were unconstitutional.  *Noel Canning*, 573 U.S. at 521 (specifying the appointments of Block, Griffin and Flynn) and at 557 (holding that "the Recess Appointments Clause does not give the President the constitutional authority to make the appointments here at issue.").  Compl. ¶ 45.

On or about July 30, 2012—before Griffin and Block were withdrawn—an unconstitutionally-appointed Board then appointed ALJ Chu, who swiftly began presiding over the NLRB Proceedings that October.  Compl. ¶¶ 46-47; *see* NLRB appoints Kenneth Chu, Christine Dibble as administrative law judges, NAT'L LAB. RELS. BD. (Jul. 30, 2012), https://www.nlrb.gov/news-outreach/news-story/nlrb-appoints-kenneth-chu-christine-dibble-as-administrative-law-judges (last visited June 05, 2023) (stating that "The National Labor Relations Board has appointed Kenneth Chu and Christine Dibble as administrative law judges in its Division of Judges, effective today.").

Because ALJ Chu was appointed by an unconstitutional Board, however, his appointment was, and remains, also unconstitutional.  ALJ Chu continues to preside over the NLRB Proceedings, and has done so since at least October 2012, despite continuing to enjoy "two-layer, for-cause" protection in violation of Article

II. *See, e.g.*, *Healthbridge Management, LLC et al*., Case Nos. 34-CA-070823, et al., Order, entered October 31, 2012 (hereinafter "October 2012 NLRB Order"), at p. 1 (stating that "The Petitioner's Requests for Special Permission to Appeal Administrative Law Judge Kenneth Chu's ruling denying their petitions to revoke the Acting General Counsel's Subpoenas Duces Tecum are denied in part and granted in part.").  Becker Decl. Ex. C.

### E.    Review Of NLRB Procedures Under the NLRA Scheme

Parties involved in NLRB procedures may seek review of ALJ agency decisions by the Board itself.  Here, two unconstitutionally appointed Board members (Griffin and Block) sat on two Board panels that reviewed ALJ Chu's decisions.  *See, e.g*., the October 2012 NLRB Order; and *HealthBridge Management, LLC et al*., Case Nos. 34-CA-070823, et al., Order, entered December 03, 2012 (hereinafter "December 2012 NLRB Order"), at p. 1 (stating that "Care One LLC's Request for Special Permission to Appeal Administrative Law Judge Kenneth Chu's ruling denying its petition to revoke the Acting General Counsel's Subpoenas Duces Tecum B-612873 is denied.").  Becker Decl. Exs. B and C.  All agency decisions and orders issued by the Board and ALJ Chu are tainted by these unconstitutional appointments.

The Board attempted to remedy its constitutional infirmities resulting from the January 2012 recess appointments when in 2019, through the General Counsel,

it filed a motion seeking to vacate the October 2012 NLRB Order, and upon *de novo* review, requested that the Board reissue that order, explicitly in light of the *Noel Canning* decision.  Becker Decl. Ex. E. And in 2020, a new Board – presumably composed of members whose appointments had all actually been confirmed by the Senate – complied with the GC's request, and re-issued the October 2012 NLRB Order, in an attempt to validate the proceedings almost a decade after the fact.  Becker Decl. Ex. F (2020 Board Decision).

The NLRA's statutory scheme allows for judicial review of Board decisions and orders in Article III courts.  *See* 29 C.R.F. § 101.14 ("Judicial review of Board decision and order.  If the respondent does not comply with the Board's order, or the Board deems it desirable to implement the order with a court judgment, the Board may petition the appropriate Federal court for enforcement.  Or, the respondent or any person aggrieved by a final order of the Board may petition the circuit court of appeals to review and set aside the Board's order.")  However, those requirements for exhausting administrative remedies and appealing to a court of appeals do not apply to collateral attacks on the constitutionality of administrative proceedings themselves.

The Supreme Court's recent decision in *Axon* allows litigants to petition Article III courts for relief in certain circumstances from agency decisions and orders before such proceedings have been exhausted.  The central issue for this

Court to decide in this action will be the constitutionality of the NLRB's structure and proceedings.  But the central issue to decide on this motion, is whether to allow unconstitutional proceedings to resume on June 26, 2023.  For the foregoing reasons and those below, this Court has the power to and must enjoin those proceedings in order to prevent irreparable constitutional harm to the Plaintiffs.

## **ARGUMENT**

### I.   **LEGAL STANDARD**

The issuance of temporary restraining orders and preliminary injunctions is governed by Rule 65 of the Federal Rules of Civil Procedure ("FRCP").  Under FRCP 65(b), a court may issue a temporary restraining order when "there is a possibility that irreparable injury will occur before the hearing on a preliminary injunction . . . can be held." *Northeastern Lbr. Mfrs. Assn. v. Sky of New York Corp.*, 2016 WL 7491903, at *2 (D.N.J. Dec. 29, 2016) (citation omitted).  "The standard used to evaluate whether the issuance of a temporary restraining order is warranted is the same as that used to evaluate whether the issuance of a preliminary injunction is appropriate." *Id.* (internal citations omitted).  That standard requires that a party show:  "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Kos Pharm., Inc. v. Andrx Corp.*,

369 F.3d 700, 708 (3d Cir. 2004).[3]  "Notably, the last two 'factors merge when the Government is the opposing party.'"  *In re 710 Long Ridge Rd. Operating Co. II*, *LLC*, No. 22-3046, 2023 WL 3116434, at *3 (3d Cir. Apr. 27, 2023) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

This Court has jurisdiction over Plaintiffs' purely constitutional claims under the Supreme Court's decision in *Axon*.  Plaintiffs also satisfy the burden for a temporary restraining order and injunctive relief seeking to enjoin the NLRB proceedings, as explained in detail below.

## II.   THIS COURT HAS JURISDICTION OVER PLAINTIFFS' PURELY CONSTITUTIONAL CLAIMS

This Court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331; *Axon*, 143 S. Ct. 890 at 898 (in each case decided by *Axon*, "the respondent in an administrative enforcement action sued in district court. . . . [and] premised jurisdiction on district courts' ordinary federal-question authority" under § 1331").  In the cases decided by *Axon*, the plaintiffs' suits "met an identical fate in district court: dismissal for lack of jurisdiction," because in each case, the plaintiffs had not exhausted the administrative review procedures set out for each agency.  *Id.* at

---

[3]     Because the standards are identical, all of Plaintiff's arguments as set forth below apply equally to both the granting of the temporary restraining order (until a hearing is held) and the subsequent granting of a preliminary injunction.

899.  But the Supreme Court held that "the review schemes set out in the [SEC Act and the FTC Act] do not displace district court jurisdiction over [litigants'] far-reaching constitutional claims."  *Id.* at 900.

Within § 1331 jurisdiction is the authority to grant injunctive relief to enjoin unconstitutional acts.  *See Free Enterprise*, 561 U.S. at 491 n.2 (2010).  This form of equitable relief "has long been recognized as the proper means for preventing entities from acting unconstitutionally."  *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001); *see also Bell v. Hood*, 327 U.S. 678, 684 (1946) ("[I]t is established practice for this Court to sustain the jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution").  Accordingly, this Court has jurisdiction over Plaintiffs' constitutional claims concerning the NLRB action, unless they are "of the type Congress intended to be reviewed within th[e] [NLRA] statutory structure."  *Axon*, 143 S. Ct. at 893.  To satisfy that exception to district court jurisdiction, there must be a "fairly discernible" Congressional intent to divest the district court of jurisdiction by requiring such claims first submitted to the agency, then appealed to a circuit court.  *See Free Enterprise*, 561 U.S. at 489.  Here, as in *Axon* and *Free Enterprise*, the NLRA contains no indication of such Congressional intent whatsoever.

In *Axon*, the Supreme Court reiterated the three-part framework for determining Congressional intent:  (1) "could precluding district court jurisdiction

17

'foreclose all meaningful judicial review' of the claim?"; (2) "is the claim 'wholly collateral' to the statute's review provisions?"; and (3) "is the claim 'outside the agency's expertise'?" *Axon*, 143 S. Ct. at 893 (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212-213 (1994). "When the answer to all three questions is yes, it is 'presume[d] that Congress does not intend to limit jurisdiction.'" *Axon*, 143 143 S. Ct. at 900 (quoting *Free Enterprise*, 561 U.S. at 489. Here, the answer to all three questions is clearly and undeniably: yes.

*First*, the parties here are involved in NLRB proceedings controlled by the NLRA that provides for judicial review of agency actions. Though Plaintiffs "can (eventually) obtain review of their constitutional claims through an appeal from an adverse agency action to a court of appeals… a problem still remains it is impossible to remedy once the proceeding is over, which is when appellate review kicks in." *Axon*, 143 S. Ct. at 903.

The litigants in *Axon*, who were embroiled in ongoing SEC and FTC proceedings where the respective statutes provided for judicial review of these agency actions, faced a similar dilemma. *Axon*, 143 S. Ct. at 903; *see* 15 U.S.C. §§ 45(c), 78y(a). There, the Commission ALJs had two layers of for-cause removal protection because, by statute, the agencies' ALJs could only be removed "for good cause as determined by the [Merit Board], whose members themselves can only be removed by the President for good cause." *Axon*, 143 S. Ct. at 898. The

*Axon* Court found that, irrespective of the agency action outcome, the parties had alleged they were "'being subjected' to 'unconstitutional agency authority'—a 'proceeding by an unaccountable ALJ.'" *Id.* at 903.  Indeed, the *Axon* Court found that "[the injury] is impossible to remedy once the proceeding is over, which is when appellate review kicks in" because "the court of appeals can do nothing: A proceeding that has already happened cannot be undone." *Id.* at 903-904.  ("The [circuit] court could of course vacate the FTC's order.  But Axon's separation-of-powers claim is not about that order. . . .").

Further, as the *Axon* Court recognized, "[w]hat makes the difference here is the nature of the claims and accompanying harms that the parties are asserting…," i.e., subjection to an unconstitutionally structured decision making process.  *Id.* Further, plaintiffs "will lose their rights not to undergo the complained-of [NLRB] proceedings if they cannot assert those rights until the proceedings are over." *Axon*, 143 S. Ct. at 904.

Plaintiffs suffer from the same "here-and-now" injury as that suffered in *Axon*:  "subjection to that process irrespective of its outcome, or of other decisions made within it." *Axon*, 143 S. Ct. at 903.  Plaintiffs here "will lose their rights not to undergo the complained-of agency proceedings if they cannot assert those rights until the [NLRB] proceedings are over." *Id.* at 904.  Accordingly, this factor

favors Article III jurisdiction over this action because otherwise review over

Plaintiffs' constitutional claims would "come too late to be meaningful."  *Id.*

*Second*, as in *Axon*, the challenge before this Court is wholly collateral to the

NLRB Proceedings because it concerns questions concerning purely constitutional

issues relating to the accountability to the President and appointment of NLRB

ALJs, not to the subject of the NLRB Proceedings.  *Axon*, 143 S. Ct. at 904

("Likewise here, both parties object to the Commissions' power generally, not to

anything particular about how that power was wielded.  The parties' separation-of-

powers claims do not relate to the subject of the enforcement actions—in the one

case auditing practices, in the other a business merger.").  Accordingly, because

Plaintiffs' challenge in this action has "nothing to do with enforcement-related

matters," which the NLRB "regularly adjudicates," and "nothing to do with those

they would adjudicate in assessing the charges" against Plaintiffs, this factor also

unequivocally favors judicial review of these claims.  *Id.* at 905.

*Third*, the claims raised here by Plaintiffs are clearly outside the NLRB's

expertise.  The Supreme Court has held that claims regarding tenure protections

under Article II "raise standard questions of administrative and constitutional law,

detached from considerations of agency policy."  *Id.* at 905 (quoting *Free*

*Enterprise*, 561 U.S. at 491 (internal quotation marks and alterations omitted)).

Here, like the Commission in *Axon*, NLRB proceedings are "generally ill suited to

address structural constitutional challenges"—like those maintained here because the NLRB's "expertise-laden grounds would not 'obviate the need' to address their constitutional claims—which, again, allege injury not from this or that ruling but from subjection to all agency authority." *Axon*, 1443 S. Ct. at 905 (quoting *Thunder Basin*, 510 U.S. at 215).

Here, Plaintiffs are not challenging the Board's or ALJ Chu's expertise in rendering substantive decisions and orders. Rather, Plaintiffs' "claims of 'here-and-now harm' would remain, no matter how much expertise could be "brought to bear" on the other issues these cases involve," because their challenge concerns the NLRB's structure itself. *Axon*, 143 S. Ct. at 906; *see also Sidak v. United States Int'l Trade Comm'n*, No. 1:23-CV-00325 (TNM), 2023 WL 3275635, at *6 (D.D.C. May 5, 2023) (citing *Califano v. Sanders*, 430 U.S. 99, 109 (1977)) (holding "Sidak's claim [of subjection to an illegitimate SEC proceeding] would in no way benefit from agency expertise" because "[h]is Appointments Clause challenge presents a pure question of constitutional law (one that agencies have repeatedly bungled), rather than a technical one."). Accordingly, because Plaintiffs' constitutional claims remain regardless of the NLRB's expertise on federal labor matters, and because the NLRB is "unsuited" to hear such claims, this factor favors judicial review.

It follows that, because all three *Thunder Basin* Factors unequivocally favor this Court's jurisdiction to review Plaintiffs' claims that the Board and ALJ Chu were unconstitutionally appointed, continue to be unconstitutionally unaccountable to the President, thus subjecting Plaintiffs to unconstitutional proceedings, this Court has jurisdiction over this matter and should exercise review here.

## III.   THIS COURT SHOULD ISSUE A PRELIMINARY INJUNCTION

### A.   Plaintiffs Will Suffer Immediate And Irreparable Harm Without Judicial Intervention.

Plaintiffs injury is not just likely or imminent; it is immediate—it is here-and-now, and has been for over a decade, through subjection to unconstitutional NLRB proceedings.  As the Supreme Court has "made clear," Plaintiffs' injury of "'being subjected' to 'unconstitutional agency authority'—a "proceeding by an unaccountable ALJ" (here, ALJ Chu) is "a here-and-now injury."  *Axon*, 143 S. Ct. at 903; *see also Sidak*, 2023 WL 3275635, at *5 (quoting *Axon*, 143 S. Ct. at 903-04 (cleaned up) (determining "the alleged injury [of unconstitutional ALJ proceedings before the SEC] is more than imminent—it is ongoing… because it is based on a constitutionally infirm protective order," thus constituting a "a here-and-now injury" from "subjection to an illegitimate proceeding."); *see also Sea-Land Serv., Inc. v. DOT*, 137 F.3d 640, 648 (D.C. Cir. 1998) ("The concrete cost of an additional proceeding is a cognizable Article III injury.").

Here, the Plaintiffs have endured ongoing and continuous injury through subjection to the unconstitutional NLRB Proceedings, which are in clear violation of Article II, since 2012.

### B.    Plaintiffs Are Likely To Succeed On The Merits Of Their Underlying Claims.

"The Appointments Clause of the Constitution lays out the permissible methods of appointing 'Officers of the United States,' a class of government officials distinct from mere employees. "*Lucia v. S.E.C.*, 138 S. Ct. 2044, 2049 (2018) (citing Art. II, § 2, cl. 2.).  "The [] Clause is one of the crucial structural safeguards of the Constitution.  Far from 'merely dealing with etiquette or protocol,' the Clause acts as a 'bulwark against one branch aggrandizing its power at the expense of another.'" *Sidak*, 2023 WL 3275635, at *4 (quoting *Ryder v. United States*, 515 U.S. 177, 182 (1995) (cleaned up)).  "It also 'preserves another aspect of the Constitution's structural integrity by preventing the diffusion of the appointment power.'" *Id.* (quoting *Ryder*, 515 U.S. 183).  Further, by "prevent[ing] Congress from dispensing power too freely," the [Appointment Clause] functions as a check on the legislative branch."  *Sidak*, 2023 WL 3275635, at *4 (quoting *Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 880 (1991)).

These constitutional limits on the appointment power "ensure that those who wield[ ] it [are] accountable to political force and the will of the people." *Freytag,* 501 U.S. at 884.  And to "ensure accountability is not 'lost in the nameless

bureaucracy,' violations of the Appointments Clause demand 'remedies with bite.'" *Sidak*, 2023 WL 3275635, at *4 (quoting *Cody v. Kijakazi*, 48 F.4th 956, 960 (9th Cir. 2022)).

> ### 1.   *Plaintiffs are likely to succeed on the merits of their Article II "Removal Protections" claim (Count I).*

Plaintiffs are likely—if not certain, under *Free Enterprise*—to prevail on their Article II claims concerning the NLRB structure and proceedings, as alleged in Count I of the Complaint, because ALJ Chu enjoys "two-layer, for-cause protection" from removal and is thus shielded from the President's removal power. As the Supreme Court has explained, the Framers concentrated Executive power solely in the President to "ensure . . . accountability" in the Executive Branch. *Printz v. United States*, 521 U.S. 898, 922 (1997).  While the President may delegate power to others, the President is the one with whom "the buck stops." *Free Enterprise*, 561 U.S. at 493.  "[E]ssential to the execution of the laws by" the President is "his power of removing those for whom he cannot continue to be responsible." *Myers*, 272 U.S. at 117.

The Supreme Court in *Free Enterprise* held that the protections present here are unconstitutional.  Under the NLRA and APA, NLRB ALJs can only be removed "for-cause" by the Merit Board.  The President can remove Merit Board members, but only for statutorily enumerated basis.  These are exactly the same

protections enjoyed by PCAOB members and ruled unconstitutional in *Free Enterprise.*

>    **2.    *Plaintiffs are likely to succeed on the merits of their Article II "NLRB Proceedings" claim (Count II).***

Plaintiffs are also likely to succeed on the merits of their Article II claims concerning the NLRB Proceedings specifically, as alleged in Count II of the Complaint.  An unconstitutionally appointed Board appointed ALJ Chu, who directly presides over the charges filed by the GC against Plaintiffs.  Compl. ¶¶ 45-47.  It follows that the entire proceedings are tainted by these unlawful appointments; thus, subjecting Plaintiffs to continuous, unconstitutional proceedings since at least October 2012.

At least two post-*Noel Canning* decisions acknowledge as much:  *Nat'l Lab. Rels. Bd. v. New Vista Nursing & Rehab.*, 870 F.3d 113, 130 n. 9 (3d Cir. 2017) (refusing to rely on 2012 decision by Board panel comprised of Hayes, Griffin and Block because such decision "has likely been nullified by *Noel Canning*, as acknowledged by the Board,"); *Advanced Disposal Servs. E., Inc. v. N.L.R.B.*, 820 F.3d 592, 596 n.1 (3d Cir. 2016) (the Board was not properly constituted until August 12, 2013, when three new members were sworn in, and accordingly "all NLRB decisions in the interim violated the quorum and three-member-composition requirements of 29 U.S.C. § 153(b).").

The taint of unconstitutionality has already rendered—and will continue to render—all decisions and orders issued by the Board and ALJ Chu in the NLRB Proceedings constitutionally invalid.  *Lucia*, 138 S. Ct. at 2048 ("[T]he 'appropriate' remedy for an adjudication tainted with an appointments violation is a new "hearing before a properly appointed" official.)

Accordingly, the Plaintiffs' are likely to succeed on their claims that NLRB Proceedings are unconstitutional, as alleged in Count II to the Complaint.

### C.   THE BALANCE OF PLAINTIFFS' PRIVATE INTERESTS FAR OUTWEIGHS ANY BURDEN ON DEFENDANTS BY AN INJUNCTION, WHICH ADVANCES THE PUBLIC INTEREST.

In stark contrast to the irreparable harm Plaintiffs have already suffered and continue to suffer, *supra* Section III. A., injunctive relief will have no meaningful impact on Defendants at all, while advancing the undeniable public interest in ensuring the constitutionality of NLRB proceedings.  Moreover, because the Government is the opposing party, the balance of harms and weight of public interest factors merge in this instance.  *In re 710 Long Ridge Rd. Operating Co. II, LLC*, 2023 WL 3116434, at *3.

There is no colorable argument that the NLRB would suffer material harm from injunctive relief staying the NLRB Proceedings, let alone any harm outweighing the harm suffered by Plaintiffs, while this Court decides Plaintiffs' constitutional claims.  In fact, to the contrary, the public undeniably has an

overwhelming interest in the proper administration of constitutional checks and balances on power.  Indeed, as the Supreme Court has held, since "[t]he diffusion of power carries with it a diffusion of accountability…[w]ithout a clear and effective chain of command, the public cannot 'determine on whom the blame or the punishment of a pernicious measure, or series of pernicious measures ought really to fall.'" *Free Enterprise*, 561 U.S. at 497-98.   Here, the NLRB chain of command is clouded from the public through a two-layer, for-cause removal scheme of NLRB Officers and Inferior Officers.  And the public deserves to know whether the NLRB and its agents are running afoul of Article II.

Plaintiffs' interest in litigating their claims in an Article III court, coupled with the strong public interest in proper constitutional checks and balances on Article II bodies, far outweighs any hardship from continuing to stay the NLRB Proceedings.

Accordingly, because Plaintiffs have satisfied all elements for a temporary restraining order and injunctive relief, the Court should grant this application.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully requests that their

Application for a Temporary Restraining Order and a Preliminary Injunction be

granted pending resolution of the merits.

Dated:  New York, New York
      June 12, 2023

**KASOWITZ BENSON TORRES LLP**

By:     /s/Christian T. Becker    
Daniel R. Benson
    (*pro hac vice* application forthcoming)
Christian T. Becker
    Attorney ID No. 044142005
1633 Broadway
New York, New York 10019
Tel: (212) 506-1932
dbecker@kasowitz.com
cbecker@kasowitz.com

*Counsel for Plaintiffs*

28