UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARE ONE, LLC, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> NATIONAL LABOR RELATIONS BOARD, *et al.*, <br><br> *Defendants*. | Civil Action No. 23-3221 <br> (MEF)(LDW) <br><br> **OPINION and ORDER** |

The Plaintiffs sued the Defendants to enjoin a trial before the National Labor Relations Board, and, in response, the Defendants filed a Motion to Transfer Venue to the United States District Court for Connecticut. The motion is granted.

**I.   Procedural History**

A National Labor Relations Board trial, already underway, is scheduled to continue in Connecticut on the morning of June 26, 2023. The trial relates to unfair labor practices that allegedly took place in Connecticut in 2012. More than forty days of trial testimony have been taken, including many during 2022.

The Plaintiffs sought to enjoin the trial by means of an Application for a Temporary Restraining Order and Injunctive Relief.

The Plaintiffs pressed two arguments. First, that the NLRB ALJ who has long presided over the NLRB trial was unconstitutionally appointed. See Memo. In Support of Plaintiffs' Application at 2 (citing Free Enter. Fund v. Pub. Co. Acct. Oversight Bd., 561 U.S. 477, 492 (2010)). And second, that the NLRB ALJ's appointment was improper under Noel Canning. See id. at 3 (citing NLRB v. Noel Canning, 573 U.S. 513 (2014)).

The application was filed during the evening of June 12, 2023 and was denied by the Court the next day. The Court directed the Plaintiffs to serve the Defendants "as soon as possible," thereby converting the application to a request for a

preliminary injunction. The Court also directed the parties to propose a briefing schedule.

On June 14, the parties proposed an agreed-upon briefing schedule and the Court entered an Order reflecting the parties' agreement, directing the Defendants to file their papers by midnight on June 20 and the Plaintiffs to file theirs by midnight on June 21.

Along with their opposition to the application for a preliminary injunction, the Defendants filed, on June 20, a Motion to Transfer Venue, seeking transfer to the District of Connecticut of the Plaintiffs' motion to enjoin the Connecticut NLRB proceedings.

The Defendants opposed the Motion to Transfer. Their opposition papers were filed at 2:15 on June 23, and oral argument was held on June 23 at 3:00.

This Opinion and Order now follows, a few hours later.

## II. The Motion To Transfer

The Defendants seek to transfer venue under 28 U.S.C. § 1404(a). Section 1404(a) provides that:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

In assessing a Section 1404(a) motion, the Court conducts a two-step analysis. See generally Interlink Prods. Int'l, Inc. v. Crowfoot, 2020 WL 6707946, at *6 (D.N.J. Nov. 16, 2020) (citing Shutte v. Armco Steel Corp., 431 F.2d 22, 24 (3d Cir. 1970)).

First, the Court determines whether the requested transferee venue is one where the action "might have been brought." Id.

Second, the Court determines "whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum[.]" Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995).

### A. Venue

The first step, as noted, is asking whether the requested

2

transferee venue (here, Connecticut) is a place where the civil action "might have been brought." Jumara, 55 F.3d at 879.

The answer is: yes. The Defendants are a federal agency (the NLRB), and various federal agency officials acting in their official capacities (Lauren McFerran, Gwynne Wilcox, Marvin Kaplan, David Prouty, and Kenneth R. Chu). In such suits, venue is proper where a "substantial part of the events . . . giving rise to the claim occurred[.]" 28 U.S.C. § 1391(e)(1).

Here, that standard is met --- the Plaintiffs' claim is that they are being unlawfully subjected to an exercise of NLRB jurisdiction in Connecticut.[1]

### B. The Transfer Factors

As noted, the second factor is "whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." Jumara, 55 F.3d at 879. The Court of Appeals has identified twelve factors to be considered as part of this analysis. See id. The so-called "private interest" factors:

> [a] plaintiff's forum preference as manifested in the original choice; [b] the defendant's preference; [c] whether the claim arose elsewhere; [d] the convenience of the parties as indicated by their relative physical and financial condition; [e] the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and [f] the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

Id. at 879. And the "public interest" factors:

> [a] the enforceability of the judgment; [b] practical considerations that could make the trial easy, expeditious, or inexpensive; [c]

---

[1] In addition, it bears noting that the Plaintiffs have not disputed that venue would be proper in Connecticut. See Plaintiffs' Memorandum in Opposition to Defendants' Motion to Transfer Venue.

3

>           the relative administrative difficulty in
>           the two fora resulting from court
>           congestion; [d] the local interest in
>           deciding local controversies at home; [e]
>           the public policies of the fora; and [f] the
>           familiarity of the trial judge with the
>           applicable state law in diversity cases.

Id. at 879-80.

These factors are not exclusive. See Jumara, 55 F.3d at 879 ("[C]ourts have considered many variants of the private and public interests."). And courts are vested with broad discretion to determine on an "individualized, case-by-case basis" whether the factors weigh in favor of transfer. See id., at 883; see also Zazzali v. Swenson, 852 F. Supp. 2d 438, 448 (D. Del. 2012); U.S. Fire Ins. Co. v. World Trucking, Inc., 2008 WL 413310, at *2 (D.N.J. Feb. 13, 2008).

The moving party bears the burden of establishing an entitlement to transfer. See Jumara, 55 F.3d at 879.

                              *    *    *

The Court now turns to analyze each of the factors.

The first factor is the plaintiff's forum choice. This choice should not be lightly disturbed. See Jumara, 55 F.3d at 879. But it is not dispositive. See Tischio v. Bontex, Inc., 16 F.Supp.2d 511, 521 (D.N.J. 1998); Am. Tel. & Tel. Co. v. MCI Commc'ns Corp., 736 F.Supp. 1294, 1306 (D.N.J. 1990).

Indeed, the plaintiff's preference is accorded relatively less weight when the plaintiff's preferred forum has "little connection with the operative facts of the lawsuit." See U.S. Fire Ins. Co. v. World Trucking, Inc., 2008 WL 413310, at *2 (D.N.J. Feb. 13, 2008) (quoting Tischio, 16 F.Supp.2d at 521); see also Am. Tel. & Tel. Co., 736 F. Supp. at 1306; Montgomery v. Schering-Plough Corp., 2007 WL 614156, at *2 (E.D. Pa. Feb. 22, 2007).

That is the case here. The National Labor Relations Board trial is underway in Connecticut. It relates to unfair labor practices that allegedly took place in Connecticut. It is being pressed forward by the Connecticut-based NLRB office. And the Plaintiffs argue that they are being subjected, in Connecticut, to an unlawful exercise of jurisdiction --- that will require

4

them, in Connecticut, to appear before an NLRB ALJ.

Moreover, applications to enjoin a proceeding as unlawful typically go forward in the District where the allegedly unlawful proceeding is itself taking place. Indeed, at oral argument, the Plaintiffs stated that they were not aware of any case in which an application to enjoin an enforcement proceeding has gone forward in a District other than the District where the proceeding is taking place. For their part, at oral argument the Defendants indicated that this occasionally happens --- but that when it does, the NLRB's standard practice, dating back many years, is to seek to transfer the application to enjoin the proceeding to the District where the complained-of proceeding is going forward. See Lab'y Corp. of Am. Holdings v. N.L.R.B., 942 F. Supp. 2d 1 (D.D.C. 2013); Pac. Mar. Ass'n v. N.L.R.B., 905 F. Supp. 2d 55, 58-59 (D.D.C. 2012).

In short, the District of New Jersey is hardly a natural place for this lawsuit.[2]

Against this conclusion, the Plaintiffs note that there is pending in this District an appeal of certain Bankruptcy Court orders, that directly concern the nursing homes that are the locations where the alleged unfair labor practices occurred. The fact that these entities are the subject of the New Jersey bankruptcy proceeding provides some connection to New Jersey. But only a faint one. The issue in the instant litigation is whether the NLRB ALJ is proceeding in violation of the Appointments Clause of the Constitution and the Supreme Court's dictate in Noel Canning. This is separate from, and wholly collateral to, any issue that may come up in the New Jersey bankruptcy context.

In sum, the first factor, the Plaintiffs' choice of forum, is, as always, entitled to some weight. And this factor cuts against transfer. But here, for the reasons set out above, the Plaintiffs' choice of forum is entitled to much less weight than

---

[2] It bears noting that the Plaintiffs are not all New Jersey entities. Indeed, River Glen, Danbury, Long Ridge, Newington, Westport, West River, Wethersfield, Highlands, and Golden Hill are Delaware corporations. Cf. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255-256, n. 23) ("One situation where deference is curbed is where the plaintiff has not chosen his or her home forum.").

is typically the case.

The second factor is the Defendants' preference.

This factor favors transfer, and all the more so because of the natural and strong connections between Connecticut and this case.

The third factor is whether the claim arose in the proposed transferee District.  It did.

The claim here is that the Plaintiffs are "here and now," Plaintiffs' Brief at 22, being subjected to an unlawful exercise of jurisdiction by a Connecticut ALJ who is requiring them to appear before a Connecticut NLRB tribunal.  That claim arises in Connecticut.[3]

Accordingly, this factor favors transfer.  See Snack Joint LLC v. OCM Group USA, NJ, Inc., 2021 WL 4077583, at *8 (D.N.J. Sept.

---

[3] See Nat'l Ass'n of Home Builders v. EPA, 675 F.Supp.2d 173, 179 (D.D.C. 2009) ("In cases brought under the APA, courts generally focus on where the decision making process occurred to determine where the claims arose."); W. Watersheds Project v. Tidwell, 306 F. Supp. 3d 350, 359 (D.D.C. 2017) ("Forest Service officials in Wyoming were the relevant decision makers . . . thus, the agency decision-making processes and analyses that led to the challenged permit occurred in Wyoming. . . . Plaintiffs also cannot deny that the alleged harm from the issuance of the challenged permit is felt most directly in Wyoming."); Beazer E., Inc. v. U.S. E.P.A., Region III, 1990 WL 109892, at *2 (E.D. Pa. July 30, 1990) ("[W]hen a public agency undertakes much of its business in a district other than that in which the agency is headquartered, venue is proper in the former district. . . . The cause of action in this case, therefore, arose with the commencement of the administrative proceeding by EPA, Region III, in this district. Venue, thus, is proper."); cf. Roh v. Schultz, 2022 WL 2132559, at *7 (D.D.C. June 14, 2022) ("Venue in [the District of Columbia] is not justified merely because a national policy stems from the District of Columbia and is marginally implicated in a plaintiff's claims. Indeed, plaintiff does not challenge the legality of the Coast Guard's SAPR policy but instead takes issue with the allegedly faulty application of that policy to his circumstances by Coast Guard officials in Connecticut."); see also Pac. Mar. Ass'n, 905 F. Supp. 2d at 63-62.

6

8, 2021) ("The third factor 'weighs in favor of transfer to the [forum] where the majority part of events and omissions from which [p]laintiff's claims arise, took place.'"); Hassett v. Beam Suntory, Inc., 2019 WL 6888406, at *4 (D.N.J. Dec. 18, 2019) ("[T]his factor weighs in favor of transfer to the Northern District of Illinois where the majority part of events and omissions from which Plaintiff's claims arise, took place."); Karimi v. Deutsche Bank Aktiengesellschaft, 2022 WL 1001566, at *5 (D.N.J. Mar. 31, 2022) ("The inquiry hinges on 'which forum contains the center of gravity of the dispute, its events, and transactions.'"); Metro. Life Ins. Co. v. Bank One, N.A., 2012 WL 4464026, at *6, 2012 U.S. Dist. LEXIS 137119, at *16 (D.N.J. Sept. 25, 2012) ("[T]he Court finds that the claims arose in, and the center of gravity of the parties' dispute is, New York.").

The fourth, fifth, and sixth factors all relate to the convenience of the parties.

Here, these factors are essentially irrelevant. New Jersey and Connecticut are close to one another. No party has suggested that witnesses or documents that would be available in one jurisdiction would not be available in another. And no party has suggested that it would be a financial strain if this matter goes forward here or there. Cf. CBS Interactive, Inc. v. Nat'l Football League Players Ass'n, 259 F.R.D. 398, 409-410 (D. Minn. 2009) (holding there was little difference in convenience to either party where both had the "financial wherewithal to bear the expense of litigating this action in either forum") (cleaned up).[4]

The seventh factor relates to whether any judgment that might be entered is more readily enforceable in one jurisdiction or another.

Here, this factor bears no weight. There is no suggestion that if the pending application for a preliminary injunction were to be granted the NLRB would be more likely to comply depending on

---

[4] The convenience of the lawyers may or may not generally matter in this context. Cf. Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 3850 (4th ed. 2023). But to the extent it does, the Plaintiffs' lawyers on this matter are associated with a prominent firm based in New York, and New York is close enough to both Connecticut and New Jersey. And the NLRB's lawyers can come to New Jersey from Connecticut if need be.

7

the District in which it is entered.

The eighth factor focuses on "practical considerations that could make the trial easy, expeditious, or inexpensive[.]" Jumara, 55 F.3d at 879. This factor, like many of the so-called public interest factors, is principally concerned with judicial economy and the overarching interests of justice. See In re: Howmedica Osteonics Corp, 867 F.3d 390, 402 n.7 (3d Cir. 2017); Lawrence v. Xerox Corp., 56 F. Supp. 2d 442, 455 (D.N.J. 1999); U.S. Fire Ins. Co. v. World Trucking, Inc., 2008 WL 413310, at *2 (D.N.J. Feb. 13, 2008)(citing Continental Grain Co. v. Barge FBL-585, 364 U.S. 19, 26 (1960)). And this factor can be especially critical. See Schiller-Pfeiffer, Inc. v. Country Home Prod., Inc., 2004 WL 2755585, at *8 (E.D. Pa. Dec. 1, 2004); Stewart v. First Student, Inc., 2022 WL 16731231, at *4 (E.D. Pa. Nov. 7, 2022); see also Canon Fin. Servs., Inc. v. JL Barrett Corp., 2010 WL 4746242, at *3 (D.N.J. Nov. 16, 2010); Montgomery v. Schering-Plough Corp., 2007 WL 614156, at *3 (E.D. Pa. Feb. 22, 2007).

This factor strongly favors transfer.

First, and as noted above, the instant application for a preliminary injunction raises two legal issues. One is whether the NLRB was improperly constituted in violation of the dictates of Noel Canning when it appointed the NLRB ALJ presiding over the Connecticut adjudication.

This is a potentially complex legal issue. But the District of Connecticut has already reached and resolved an exceedingly close legal issue. Namely: whether the NLRB was properly constituted (in violation of Noel Canning) when it appointed the NLRB General Counsel responsible for pressing forward the Connecticut NLRB adjudication at issue here. Indeed, the Second Circuit has also passed on this precise issue. See Kreisberg v. HealthBridge Mgmt., LLC, 732 F.3d 131 (2d Cir. 2013). And these courts reached these issues in the context of the very same Connecticut NLRB adjudication that underlies the instant application for a preliminary injunction.

It plainly advances the cause of judicial economy for the District of Connecticut to consider the Noel Canning issue raised here, now, by the Plaintiffs. Indeed, that issue appears to be extremely closely related to the Noel Canning issue the District of Connecticut previously resolved --- in the context of the very NLRB adjudication at issue here.

8

And the point is stronger yet, because, as the Defendants contend, the current Noel Canning issue may well be resolved by assessing the impact of various NLRB internal governance practices, in particular as to ratification of previously-made administrative appointments. But the District of Connecticut and the Second Circuit have already assessed NLRB internal governance practices (in connection, though, with delegation, not ratification). And again --- those courts have done so in the context of the very same NLRB adjudication at issue in the instant case. See generally Kreisberg v. HealthBridge Mgmt., LLC, 732 F.3d 131 (2d Cir. 2013).

Indeed, it bears noting that the District of Connecticut's determination and the Court of Appeals' affirmance as to the prior (and closely related) Noel Canning issue likely constitutes law of the case. See Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816 (1988). And that could presumably impact how the current Noel Canning issue is assessed.

In addition to the above, the District of Connecticut has been (at times) deeply involved in the nucleus of facts that form the basis for the NLRB Connecticut adjudication. The Court presided over briefing and oral argument on the NLRB's petition seeking a temporary injunction pursuant to section 10(j) of the National Labor Relations Act, 29 U.S.C. § 160(j), which the Court ultimately granted. See Kreisberg v. HealthBridge Mgmt., LLC, No. 12-cv-01299-RNC (D. Conn), ECF Nos. 1, 36, 39, 49, 55. And the Court subsequently granted a motion for contempt pressed by the NLRB, finding non-compliance with the Court's 10(j) injunction. See id. at ECF No. 111. Per the Court's order of May 30, 2014, that matter has been held in abeyance and the District of Connecticut apparently retains jurisdiction over the matter. See id. at ECF No. 143.

This close-in knowledge of the underlying NLRB adjudication could be important to resolution of the issues here. For example, the Defendants have suggested that the Plaintiffs current claims may be precluded by abandonment or by equitable laches. After all, the argument goes, the Plaintiffs' Noel Canning claim could have been raised (before the ALJ or before the District of Connecticut) at some point after June 2014, when Noel Canning was decided --- but before June 20 of this year. And similarly, the argument goes, the Plaintiffs' Appointments Clause challenge could have been raised (again, before the ALJ or before the District of Connecticut) at some point after June 2010, when Free Enterprise was decided --- but before June 20 of

9

this year.

But assessing these sorts of arguments requires a familiarity with the proceedings that were in fact taking place before the ALJ --- and, indeed, the proceedings that were taking place before the District of Connecticut (and that, in some sense, are still before the District of Connecticut, which apparently retains jurisdiction). The District of Connecticut is of course much closer to those questions than the District of New Jersey.

In sum, the eighth factor favors transfer, and strongly.

The ninth factor relates to "the relative administrative difficulty in the two fora resulting from court congestion." Jumara, 55 F.3d at 879.

Arguing in favor of transfer, the Defendants cite various statistics that purport to show greater court congestion in the District of New Jersey than the District of Connecticut. Perhaps. And perhaps such considerations are generally relevant. Cf. Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 3854 (4th ed. 2023). But not here. The NLRB adjudication involves allegations of widespread unfair labor practices that allegedly impacted many people. And the instant application for a preliminary injunction involves constitutional questions that go to the heart of the separation of powers that protect our liberties. Whether this case goes forward in the District of Connecticut or the District of New Jersey --- it is likely that it will be treated as a priority, and background issues of docket congestion will not prove material.

The tenth factor is the local interest in deciding local controversies at home.

This factor plainly favors transfer to Connecticut, largely for the reasons described above. See generally Lab'y Corp. of Am. Holdings v. N.L.R.B., 942 F. Supp. 2d 1, 4 (D.D.C. 2013)

The eleventh factor focuses on the public policies of the relevant fora.

This factor has no bearing here.

The twelfth factor is "the familiarity of the trial judge with the applicable state law in diversity cases." Jumara, 55 F.3d at 879-80.

10

This factor, strictly speaking, is not relevant here. This is not a diversity case. But the District of Connecticut, as noted, is closely familiar with the underlying NLRB adjudication --- and indeed with some of the precise legal issues raised here. Accordingly, this factor favors transfer.

*   *   *

In sum, the relevant factors, balanced one against the next and considered together, generally favor transfer to the District of Connecticut. Accordingly, the Motion to Transfer Venue to the United States District Court for Connecticut is granted.

IT IS on this 23rd day of June, 2023, so **ORDERED**.

_____
Michael E. Farbiarz, U.S.D.J.